I'm Steve Richard for the defendant Silviano Marcelino-Garcia. I'd like to focus, I think, on just two primary issues, unless the court wishes otherwise, the first being we suggest that the government in this case effectively unconstitutionally caused the burden of proof to be shifted from the government to Mr. Marcelino-Garcia, arguing that the proof was sufficient to show that he was actually deported and removed from the United States and that any suggestion otherwise would be speculation and that there was no evidence presented that Mr. Marcelino-Garcia did not actually leave the country. We believe that that was an inappropriate shift, causing or suggesting that the jury should make a determination that Mr. Marcelino-Garcia was required to put forth some evidence that he did not actually physically leave the country. That also dovetails with the sufficiency of evidence. And I think the government at trial in here has taken the same position as far as what the evidence actually shows, and that is that the document or the paper trail of which suggests deportation is sufficient under the law, or maybe is a matter of law, to prove that he physically – that the defendant physically left the country.  I don't think the Court has gone quite that far. Well, how have we – how is Bahena-Cardenas limited? Pardon me? Bahena-Cardenas. How is that limited? In this case, specifically with Mr. Marcelino-Garcia, there were facts – there were – there was testimony which would suggest that the physical record is not sufficient to show actual removal. And I recognize that the language in both that case and the Contreras case pretty broad, saying that the paper trail itself is sufficient. But when we're in a trial in this case, the testimony of the agent was that record reflects at this particular deportation spot, that record reflects only that the defendant was escorted to a gate, the gate was open, and he had to cross a bridge. The evidence that was presented to this jury did not go any further than that. And I suggest that although the language in Cardenas and Bahena is broad, that this is not sufficient to show that the record is sufficient. And I recognize that the testimony of the agent was that record reflects at this particular gate, the gate was open, and he had to cross a bridge. The evidence that was presented to this jury did not go any further than that. And I recognize that the testimony of the agent was that record reflects at this particular gate, the gate was open, and he had to cross a bridge.   And I recognize that the evidence that was presented to this jury did not go any further than that. And I recognize that the testimony of the agent was that record reflects at this particular gate, the gate was open, and he had to cross a bridge. Is that a fair summary? The fellow who did testify testified as to how he saw that done at that crossing point. The person who signed the form did not testify. Okay. So the testimony was, this is how it's done. And when you sign the person most likely signed off on the document, he most likely signed off the document in this pen area. Well, you know, on the shift into the burden, the prosecutor told the jury, here's what the government has to prove. It's our burden to prove every element of the crime. It's not the defendant's burden to prove or disprove anything. That's our burden. Our burden is to show by proof beyond a reasonable doubt that he committed the crime that we have charged him with each element of that crime. That's clearly what the prosecutor said. And then she goes on that the defense is merely speculating that there is no evidence that Mr. Marcelino Garcia did not go, there is no evidence that he had permission to return, which, although the recitation of the government says I have to prove this case beyond a reasonable doubt in each element, the prosecutor then went on to say, but there's no evidence here. Mr. Marcelino Garcia simply asked you to speculate. And I think that's where, although maybe lip service is, we have to prove it all. In fact, the government suggested that there had to be some proof, or there should have been some proof, to support defense theory. And by doing so, I think that the Constitution shifted the burden from the government to Mr. Marcelino Garcia. Effectively, the testimony and the evidence just didn't get Mr. Marcelino Garcia 70 yards further than he needed to be. It didn't show he crossed the border. And with that, I'll yield. Thank you very much. May it please the Court, I am Michelle Mallard, representing the United States of America, and I first want to apologize for not being here when the case was called. I was looking at an old calendar and thought we had one more, so I was trying to take a quick break. You're right. Don't worry about it. Thank you. Okay. As a matter of fact, we needed a break. You helped us out. Thank you. First of all, I'd like to point out that the case law, as the judges pointed out, overwhelmingly supports that I-205s or warrant of deportation are sufficient evidence of physical removal from the ‑‑ from this country. And in fact, the cases do so in some very strong language. I believe in Romo ‑‑ Romo, it says, because we were not afflicted with barminess, the inference is overwhelming that Contreras followed the road to where it led. And in Contreras, the Court speculated that the defendant might have vaulted over the railing or been whisked into air, but the inference is overwhelming that he led ‑‑  And although I will certainly admit that Mr. Richard did a fine job in cross-examination of pointing out that it might be possible for a defendant not to cross into the border of Mexico, the witness at the same time said that even if that possibility occurred, that the deportee would get caught by the various other measures that were in place. And in fact, the witness, as Mr. Richard pointed out, was someone who ‑‑ he was not the witnessing officer on the I-205. He was someone who was familiar with the border crossings at El Paso. So why don't we have ‑‑ I mean, wouldn't it be better if you had the witness who signed the warrant of removal? It would have been, Your Honor. But it's not unusual for this to happen. In Contreras, the testimony was from the non-witnessing INS officer. And in Bahena Cardenas, the agent who witnessed did not testify. So Romo-Romo is the only case of the three in which the actual witnessing INS officer testified. And in that case, he said that he did not remember the defendant crossing the border. Yeah, because I think that defense counsel makes a good point that our case law does establish the role that the warrant of removal is enough. But if actually you could establish that, in fact, I'm not saying that this was done here all the way,  but if in a future case you could establish that he did not, in fact, cross all the way or that no one saw him cross all the way, that maybe we wouldn't give the warrant of removal such weight. Well, in Romo-Romo, the facts were that there was, first of all, an improper jury instruction. And that was the issue in that case. But this Court said that in Romo-Romo, the defendant testified that he had not crossed the border. He actually testified and said, I didn't cross the border. I escaped the notice of the agents, and I didn't cross. And in Romo-Romo, this Court says that if the jury believed the government's I-205 testimony, then they could convict under 1326. If they believed Romo-Romo's testimony, then they could acquit. But in either event, it appeared that the evidence would be sufficient. It would just depend on what the jury decided and who they believed. And this case is far – the evidence goes far beyond or falls far short, I should say, of the failure to cross the border than the actual testimony would be. Here, Mr. Richard did point out that it might be possible that someone could, as this Court says, hoodwink the agents and officers. But there's no other – I mean, he pointed that out in cross-exam that it would be possible. But there was certainly no testimony. There were no documents to show that he tried to come back in or that he didn't leave. Or there was no evidence that he hadn't actually crossed the border, as there was in Romo-Romo, where the defendant actually testified. And as I pointed out, certainly Mr. Richard did an excellent job on cross-examination. But the testifying witness also described a very elaborate process for making sure that actual deportations occur. He described a completely enclosed sally port area where buses or cars full of deportees would be taken. That led to a tunnel of chain link with gates on both the north and south ends of that tunnel, that there were 15 to 20 officers handling property identification and gates for between 44 and 46 deportees. That's a ratio of about one officer to every two to three deportees. He said that 10 to 12 people would go through the gate at one time. And he even testified that at times these deportees were escorted right to the border, and at other times they were just sent through the gate. At the gate, each individual deportee was identified by the officer, signing of the I-205. And at that point, there were 10 to 15 cameras watching to make sure that the deportees crossed into Mexico. Those cameras were remotely monitored by law enforcement. There was an 8-foot fence on the bridge going into Mexico. There were deportation officers watching. And he said that if, in spite of all these measures, he did perhaps manage to escape and not cross the border, that there were inspection admission officers that would be in counter or border patrol and that there were underground sensors in place. So, essentially, the witness in the end said they would still get caught, even if the possibility that Mr. Richard raised occurred, that it would still be very likely that the deportee would get caught. And, of course, it is important that there was no evidence to that effect. The possibility was raised, and in my closing argument, I certainly did use the word speculation a number of times, but I think that's exactly what it was. And it was certainly a very good attempt at attacking our evidence and certainly caused me many tense moments during deliberations, especially when the jury instructions came out directly addressing the issue that Mr. Richard raises now, which I think is also significant. There's no question, as there was in Romo-Romo, of a wrong jury instruction. There's no question that the jury understood exactly what the issues were. And they came back and found Mr. Marcelino Garcia guilty. And, especially when you look at the standard of review in this case, if, when the evidence is viewed in the light most favorable to the government, any rational trier fact could have found the essential elements beyond reasonable doubt, then the verdict must be sustained. And I think that there were – well, I know that there were some,  the essential elements beyond reasonable doubt. There were 12 people, all of whom I will assume are rational, who found that the evidence was sufficient. Taking just a moment to discuss the burden-shifting argument, as the Court pointed out, that is a plain error standard. The case law in Mears and Vandring both state that it's proper to highlight the weaknesses of the defendant's case as long as there is no reference to the defendant's failure to testify and no argument that a guilty verdict is required. And in this case, of course, I repeatedly stated that it was a government's burden and never once referred or even implied that the defendant had not testified or that he should have, and never argued that the government, or that a guilty verdict was required, although I certainly urged one. And as this Court well knows, it is the law that the I-205 is sufficient, and I did base my argument on that in the closing argument. And I would ask the Court to sustain the verdict. Thank you. Thank you. Rebuttal. I'll be brief. In the Cardenas case, the actual holding was we hold that the warrant of deportation in this case is non-testimonial and thus admissible. And Judge Shea from the Eastern District of Washington in Perales, U.S. v. Perales Flores, commenting on the Romo-Romo and the heinous Cardenas issues, the Crawford issue I think was raised, Judge Shea says, Whatever the merits of this holding, the requirement that the government must prove absence from the United States in order to prove an illegal reentry was reaffirmed. And that's the point. It's fact-driven. There were – although the Court or the case law is pretty strong saying the government can use the documents, and that would be sufficient, but if there are – if there is testimony contrary to what the inference is from those documents, I think that's where the failure lies in this case. Thank you. Thank you. And this matter will stand submitted and will adjourn. Thank you.
judges: Goodwin, Pregerson, Wardlaw